FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 05, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELVIN N.,[1] | No. 1:19-cv-03164-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 8, 2016, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of May 1, 2015.  Tr. 85-86, 217-24.  The applications were denied

initially and on reconsideration.  Tr. 143-51, 157-76.  Plaintiff appeared before an

administrative law judge (ALJ) on February 5, 2018.  Tr. 42-84.  On June 20,

2018, the ALJ denied Plaintiff's claim.  Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2015. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, borderline personality disorder, and antisocial personality disorder. Tr. 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [Plaintiff] is able to understand, remember, and carry out simple routine tasks in two hour intervals; [Plaintiff] can have occasional superficial interactions with a small group of coworkers, defined as no more than 20; [Plaintiff] cannot perform tandem tasks or tasks involving cooperative team effort; and [Plaintiff] cannot have contact with the general public.

Tr. 20.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, kitchen helper, and laundry

ORDER - 7

worker.  Tr. 28.  Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of May 1, 2015, though the date of the decision.  Tr. 28.

On May 17, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-three analysis;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 2.

## DISCUSSION

### A.    Step Three

Plaintiff contends that the ALJ erred at step three by finding Plaintiff's impairments did not meet the paragraph C criteria for listing 12.04 and by failing to make specific findings.  ECF No. 14 at 3-7.  At step three, the ALJ must

determine if a claimant's impairments meet or equal a listed impairment. 20
C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments
"describes for each of the major body systems impairments [which are considered]
severe enough to prevent an individual from doing any gainful activity, regardless
of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925.
To meet a listed impairment, a claimant must establish that he meets each
characteristic of a listed impairment relevant to his claim. 20 C.F.R.
§§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he
will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
The claimant bears the burden of establishing he meets a listing. *Burch v.
Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the
reason(s) why the individual is or is not disabled at a later step in the sequential
evaluation process will provide rationale that is sufficient for a subsequent
reviewer or court to determine the basis for the finding about medical equivalence
at step 3." SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

   In determining whether a claimant with a mental impairment meets a listed
impairment, the ALJ must follow a "special technique" to evaluate the claimant's
symptoms and rate his functional limitations. 20 C.F.R. §§ 404.1520a(a),
416.920a(a). Specifically, the ALJ must consider: (1) whether specific diagnostic
criteria are met ("paragraph A" criteria); and (2) whether specific impairment-

related functional limitations are present ("paragraph B" and "paragraph C" criteria). 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The criteria in paragraph A substantiate medically the presence of a particular mental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a). The criteria in paragraphs B and C, on the other hand, describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b), (c). To meet or equal listing 12.04 (depressive, bipolar, and related disorders), a claimant must satisfy either: (1) paragraphs A and B; or (2) paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2).

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). Specifically, the paragraph C criteria provide an alternative means of demonstrating disability for those claimants who experience "serious and persistent" mental disorders but whose "more obvious symptoms" have been controlled by medication and mental health interventions. *Id*. To satisfy the paragraph C criteria, a claimant must show that his mental impairment(s) has existed for at least two years, and that (1) he relied, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder," and (2) despite his diminished symptoms and signs of his mental disorder, he has

achieved only "marginal adjustment," meaning "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

On this record, the ALJ's step three analysis and findings are adequate and supported by substantial evidence. Plaintiff argues that it was error for the ALJ to assert in boilerplate language that the paragraph C requirements were not met, and to instead generally reference later findings in the decision. ECF No. 14 at 5 (citing Tr. 20). Focusing on the challenged paragraph C criteria analysis, the ALJ considered Plaintiff's mental impairments and found that they did not meet or medically equal the paragraph C criteria. Tr. 20. More specifically, the ALJ found "the record does not establish that [Plaintiff] had only marginal adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that were not already part of [Plaintiff's] daily life." Tr. 20. The ALJ also stated, "discussed in greater detail below, [Plaintiff] has adapted to the requirements of daily life." Tr. 20. The step three findings by the ALJ must be read in conjunction with the entire ALJ decision. SSR 17-2P, 2017 WL 3928306, at *4. Here, the ALJ discussed the medical records and medical opinions related to Plaintiff's mental impairments at great length. Tr. 21-26. The ALJ's analysis in its entirety as to Plaintiff's mental health impairments permits the Court to meaningfully review the

ALJ's finding that Plaintiff's mental health impairments did not satisfy the

paragraph C criteria for listing 12.04.

Further, the ALJ's finding that Plaintiff did not satisfy the paragraph C

criteria is reasonable and supported by substantial evidence. The record reflects

that Plaintiff has more than a minimal capacity to adapt to changes in his

environment or to demands that are not already part of his daily life. As discussed

by the ALJ, prior to August 2016, Plaintiff had generally normal findings on his

mental status examinations. Tr. 23-25; *see, e.g.,* Tr. 395, 402, 408 (December

2015 to February 2016: Plaintiff was alert and cooperative with an appropriate

appearance); Tr. 402-03, 408-09 (December 2015 to January 2016: Plaintiff had

normal mood and affect, intact memory and concentration, logical and linear

thought, fair insight and judgment, and no ideations of self-harm or harming

others; however, his thought content exhibited some paranoia about getting

mugged and he carried pepper spray); Tr. 396-97 (February 2016: Plaintiff had

neutral to sad mood, intact memory and concentration, logical and linear thought,

fair insight and judgment, and no ideations of self-harm or harming others). The

ALJ also noted that after Lithium was added to Plaintiff's medication regimen in

2016, his symptoms improved significantly. Tr. 24; *see, e.g.,* Tr. 625 (December

2016: since starting Lithium, Plaintiff reported "a big change" in his mood; he

described zero anger outbursts, feeling calm, engaging in more "adult-like"

behavior with his father; and he reported no adverse side effects); Tr. 615 (February 2017: Plaintiff reported that Lithium had been beneficial; he was not getting as angry or agitated anymore, although he did endorse several breakthrough moments of feeling agitated; he was medication compliant without side effects). The ALJ observed that Plaintiff was able to maintain his finances, follow written and visual instructions, and care for his children, which included feeding them, playing with them, changing their diapers, reading to them, and putting them to bed. Tr. 19-20, 272, 274, 276. The ALJ also gave great weight to Michael Rose, Ph.D., and Ben Kessler, Psy.D., State agency physicians who specifically considered listing 12.04 and determined that Plaintiff did not meet or equal a listed impairment. Tr. 26, 106, 121.

Plaintiff argues that the evidence supports a conclusion of marginal adjustment. ECF No. 14 at 3-7. He asserts that his father reported Plaintiff did not handle stress or change well and needed reminders to take medications, perform chores and household responsibilities, and attend appointments, Tr. 287-94, and Plaintiff's treating therapist, Ivonne Garcia, MHP/MS, opined that he met the requirement of marginal adjustment. Tr. 439. Further, Plaintiff argues that the ALJ failed to address other pertinent evidence in the record that supported the marginal adjustment requirement. ECF No. 14 at 6-7; *see, e.g.,* Tr. 433 (April 2016: Plaintiff endorsed homicidal ideation); Tr. 451-53 (July 2016: Plaintiff had

worse symptoms after his SSI claim was denied and he started a new medication);

Tr. 631, 637 (July and August 2016: Plaintiff's bipolar questionnaire scores were

elevated, and he presented with tearfulness, dysthymia, depression, and paranoia;

he described feeling trapped and unable to handle his everyday responsibilities[2]);

Tr. 54, 467-70, 546, 629 (August 25, 2016: Plaintiff was arrested for receiving

explosives in the mail, which he had planned to use to make smoke bombs); Tr.

470 (September 6, 2016: Plaintiff was incarcerated and started on Lithium).

However, although not addressed under the step three analysis, and with the

exception of Plaintiff's bipolar questionnaire scores, the ALJ discussed this

information in her decision.  Tr. 23-24; *see* SSR 17-2P, 2017 WL 3928306, at *4

("An adjudicator's articulation of the reason(s) why the individual is or is not

disabled at a later step in the sequential evaluation process will provide rationale

that is sufficient for a subsequent reviewer or court to determine the basis for the

finding about medical equivalence at step 3.").  Plaintiff essentially invites this

Court to reweigh the evidence, but Plaintiff's alternate interpretation is not enough

to assign error to the ALJ's findings.  It is the ALJ's responsibility to resolve

_____

[2] Plaintiff cites a treatment note stating he reported feeling trapped, as "[b]efore I

was able to do whatever I wanted, now I have the kids 24/7 and responsibilities.  I

don't know what to do."  Tr. 631.

conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). The ALJ's determination that Plaintiff's mental health impairments did not meet the paragraph C criteria is supported by substantial evidence in the record as whole.

**B.     Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 7-13. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Not Supported by Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 22, 26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the

severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ discussed Plaintiff's alleged symptoms that caused him to be unable to work, such as bipolar disorder, panic attacks, depression, and super ventricular tachycardia. Tr. 21. The ALJ cited Plaintiff's reports that his impairments caused him to "stress out easily, become extremely angry, and scream at and threaten" others including employers and supervisors. Tr. 21 (citing Tr. 271). The ALJ also cited Plaintiff's allegations that he was extremely violent with other adults and tended to avoid others or hide, he could only pay attention for two to three minutes, and did not finish what he started. Tr. 21. However, the ALJ found that treatment records showed mostly normal findings that did not support Plaintiff's allegations of total disability. Tr. 22-24, 26; *see, e.g.,* Tr. 364 (November 2015: a mental status examination showed Plaintiff had good eye contact, no psychomotor movements, and normal speech with a rapid rate; his thought process was tangential; he was extremely talkative but easy to redirect; he had euthymic mood, congruent affect, and he denied any psychosis; he had moderate insight and judgment with somewhat impaired concentration and attention; he had intact memory and normal intellectual ability); Tr. 395, 402, 408 (December 2015 to February 2016: Plaintiff was alert and cooperative with an appropriate appearance); Tr. 402-03, 408-09 (December 2015 to January 2016:

Plaintiff had normal mood and affect, intact memory and concentration, logical and

linear thought, fair insight and judgment, and no ideations of self-harm or harming

others; however, his thought content exhibited some paranoia about getting

mugged and he carried pepper spray); Tr. 396-97 (February 2016: Plaintiff had

neutral to sad mood, intact memory and concentration, logical and linear thought,

fair insight and judgment, and no ideations of self-harm or harming others); Tr.

444 (April 2016: Plaintiff's speech was slightly pressured and rapid, his mood was

slightly manic and positive, and he endorsed homicidal ideation); Tr. 461-62 (May

2016: Plaintiff's speech was not as pressured or rapid, his mood was positive, he

was slightly manic but with no evidence of depression, and he had no homicidal

ideation); Tr. 455-56 (June 2016: Plaintiff had congruent affect, intact memory,

attention, and concentration, and logical and linear thought form despite facing

situational stressors due to legal issues); Tr. 633-34 (August 2016: Plaintiff had

normal findings upon mental status examination); Tr. 625 (December 2016:

Plaintiff was imprisoned for about four months and returned to treatment in

December 2016); Tr. 626 (December 2016: Plaintiff had a normal mental status

examination with a pleasant and happy mood, full ranging affect, intact memory,

attention, and concentration, logical and linear thought form, and normal cognitive

function); Tr. 558, 564, 572, 577, 582, 590, 608-09, 615-16, 619-20 (January 2017

to November 2017: treatment records showed that Plaintiff continued to have

ORDER - 19

generally normal mental status examination findings while he remained medication compliant, with only some reports of mild anxiety secondary to situational stressors); Tr. 590, 598-99 (April 13, 2017: Plaintiff had a slight increase in anxiety, but he attributed the majority of his symptoms to stress over a court hearing; he returned to having normal mental status examination findings at his next appointment).

Plaintiff argues that the ALJ's findings are not supported by the record, and instead, the objective findings are consistent with his allegations. ECF No. 14 at 9-10; *see, e.g.,* Tr. 364 (November 2, 2015: thought process is tangential); Tr. 385 (December 21, 2015: thought content exhibited paranoia that others involved in gangs will jump him or concerned about why others are not calling him back); Tr. 379 (January 27, 2016: thought content exhibited paranoia); Tr. 375 (February 3, 2016: presented with anxious mood); Tr. 369 (February 24, 2016: reported feeling manic, had anxious affect); Tr. 367 (March 14, 2016: tearful and reported feeling manic, had anxious affect); Tr. 433 (April 11, 2016: endorsed fairly recent suicidal ideation, about six months ago; endorsed some ongoing homicidal ideation, most recently about three nights ago); Tr. 443-44 (April 14, 2016: presented as slightly manic, endorsed homicidal ideation, anxiety, and paranoid thoughts); Tr. 441 (April 18, 2016: continued to endorse anxiety, but stated that medication and utilizing his learned coping skills had been beneficial); Tr. 460-61 (May 12, 2016:

worried and paranoid about possibly going to prison); Tr. 458 (May 26, 2016: feeling very emotional and manic due to the stress of legal issues; he was tangential); Tr. 452 (July 18, 2016: endorsed thoughts of self-harm and harm to others, but denied plan/intent); Tr. 637 (July 19, 2016: endorsed feeling a little manic and having anxiety; he was tearful); Tr. 631 (August 23, 2016: tearful part of the session); Tr. 470 (September 6, 2016: treatment note while in jail stated Plaintiff's mood was still somewhat labile); Tr. 603 (April 11, 2017: anxious); Tr. 599 (April 13, 2017: anxious); Tr. 590 (May 12, 2017: mild anxiety); Tr. 587 (May 16, 2017: continued to endorse anxiety, but stated that medication and utilizing his learned coping skills had been beneficial); Tr. 582 (June 12, 2017: mild anxiety); Tr. 577 (July 10, 2017: mild anxiety); Tr. 572 (August 21, 2017: mild anxiety); Tr. 570 (August 25, 2017: labile mood, tearful at times when talking about his kids and his current situation with ex-partner); Tr. 561 (November 3, 2017: labile mood); Tr. 564 (October 3, 2017: mild anxiety); Tr. 558 (November 7, 2017: mild anxiety); Tr. 649 (December 11, 2017: mild anxiety); Tr. 644 (January 12, 2018: anxious mood, but provider reported that "he looks more stable, less anxious than last sessions").  It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857.  The Court must consider the ALJ's decision in the context of "the entire

record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of impairment alleged by Plaintiff. Tr. 22, 26. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's improvement with treatment, *see infra*, to discount Plaintiff's symptom complaints.

### 2. *Improvement with Treatment*

The ALJ found that Plaintiff's symptom claims were inconsistent with the level of improvement he showed with medication. Tr. 19, 24. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted that Plaintiff's allegations of disabling mental health symptoms were inconsistent with his treatment records which documented

significant overall improvement after he was started on Lithium in 2016. Tr. 19, 23-24, 26; *see, e.g.,* Tr. 625-26 (December 2016: after he began taking Lithium, Plaintiff reported "a big change" in his mood; he described zero anger outbursts, feeling calm, interacting in a more "adult like" manner, and reported no medication side effects; Plaintiff's mental status examination was essentially normal; his memory, attention, concentration, thought form, and cognitive function were all normal; he had a pleasant and happy mood with full ranging of affect and was "[c]ertainly not hypomanic or depressed"); Tr. 615 (February 2017: Plaintiff reported that he was feeling good and that Lithium was beneficial for stabilizing his mood); Tr. 589 (May 2017: Plaintiff reported that Lithium was adequately managing his bipolar symptoms); Tr. 648 (December 11, 2017: Plaintiff reported improved mood since increasing Lithium; no adverse side effects). On this record, the ALJ reasonably concluded that the improvement Plaintiff reported with his medication supported a finding that he was capable of work with the nonexertional limitations set forth in the RFC, which was inconsistent with Plaintiff's subjective symptom claims. This was a clear and convincing reason to discredit Plaintiff's symptom allegations.

### 3. Reasons for Stopping Work

The ALJ found that Plaintiff's symptom complaints were less reliable because he stopped working for reasons other than his impairments and provided

inconsistent statements regarding why his work ended. Tr. 21. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Further, in evaluating a claimant's symptom claims, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ noted that Plaintiff alleged he was unable to work due to bipolar disorder, panic attacks, depression, and super ventricular tachycardia. Tr. 21. However, the ALJ also observed that Plaintiff reported he stopped working due to lack of transportation and stress. Tr. 21 (citing Tr. 249). The ALJ noted that Plaintiff alleged his impairments caused him to "stress out easily, become extremely angry, and scream at and threaten" others, including employers and supervisors. Tr. 21 (citing Tr. 271). While Plaintiff reported lack of transportation as one additional reason for stopping work, he consistently reported that stress related to his impairments caused him to stop working. Tr. 249, 271. The ALJ's determination that Plaintiff stopped work for reasons unrelated to his impairments, and that he provided conflicting statements about his reasons for stopping work, are not supported by substantial evidence. Therefore, to the extent that this was a

basis for the ALJ to discount Plaintiff's symptom claims, this was not clear and convincing reason to do so.

This error is harmless because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 4. *Failure to Follow Treatment Recommendations*

Defendant argues that the ALJ discounted Plaintiff's reported symptoms because Plaintiff failed to follow a prescribed course of treatment. ECF No. 15 at 7 (citing Tr. 23-24). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ noted that Quetiapine was added to Plaintiff's medication regimen in July 2016, but Plaintiff

discontinued this medication after taking it for two nights because it was too

sedating and it made him angry, even after taking only a half dose the second

night.  Tr. 23, 636.  The ALJ noted that a nurse informed Plaintiff that the side

effects of Quetiapine usually decreased and disappeared after a week or two, but

Plaintiff was not willing to continue the medication.  Tr. 23 (citing Tr. 636).  The

ALJ also observed that Plaintiff was not willing to try Lithium prior to August

2016.  Tr. 24, 625.  However, the ALJ did not specifically discount Plaintiff's

reported symptoms because he chose to discontinue Quetiapine or was unwilling to

try Lithium until August 2016.  To rely on noncompliance as a basis to discount

Plaintiff's reported symptoms, the ALJ was required to give "specific, clear and

convincing reasons" for the rejection.  *Ghanim*, 763 F.3d at 1163.  Here, to the

extent that the ALJ may have offered this reasoning, the ALJ's general finding was

insufficient.

Even if the ALJ's general finding was sufficient, any decision to discount

Plaintiff's symptoms as a result of this reported medication noncompliance is not

supported by substantial evidence.  First, the record is unclear as to why Plaintiff

was unwilling to try Lithium prior to his incarceration in August 2016.  Tr. 625

(December 2016: provider stated in a treatment note that Lithium "was a

medication [Plaintiff] was unwilling to try prior to his incarceration," but the

treatment note does not state the reason for Plaintiff's unwillingness to try the

ORDER - 26

medication). If this "medication noncompliance" was due to Plaintiff's mental health condition, then it would have been improper for the ALJ to discount Plaintiff's reported symptoms for this reason. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (recognizing when noncompliance is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment). Second, as the ALJ stated, Plaintiff chose to stop taking Quetiapine due to negative side effects. Plaintiff asserts that he is unable to work in part due to his anger symptoms, and he reported to his provider that Quetiapine made him "so angry," very sedated, and irritable, even when taking only a half dose. Tr. 636. Plaintiff did not delay in reporting these negative side effects, as he was prescribed Quetiapine on July 18, 2016, and his call to report the negative side effects was memorialized in a treatment note four days later, on July 22, 2016. Tr. 636. Moreover, when Plaintiff called to report the negative side effects of Quetiapine, he wanted to know if his provider would make another medication change. Tr. 636. The record documents the reason that Plaintiff decided to stop taking Quetiapine. Finally, the remainder of the record indicates that Plaintiff otherwise complied with medication recommendations unless he experienced negative side effects. *See, e.g.,* Tr. 409 (December 2015: Plaintiff's Lamotrigine was increased); Tr. 411 (December 2015: Plaintiff reported that his

medication was helping his mood swings, but he still felt anxious and had problems sleeping); Tr. 403 (January 2016: Plaintiff began taking Abilify); Tr. 396 (February 2016: Plaintiff started taking Bupropion and Abilify was stopped); Tr. 443 (April 2016: Plaintiff reported feeling "really good" on Bupropion, his provider increased Lamotrigine and proceeded to monitor for symptom improvement); Tr. 441 (April 2016: Plaintiff's provider noted he continued to endorse anxiety, but Plaintiff stated that medication and utilizing his learned coping skills had been beneficial); Tr. 54 (February 5, 2018: Plaintiff testified, "I take my medications as prescribed").

Even if the ALJ erred by discounting Plaintiff's symptom claims because of treatment noncompliance, this error is harmless because, as discussed *supra*, the ALJ provided other legally sufficient reasons to discount Plaintiff's reported symptoms. *See Carmickle*, 533 F.3d at 1163.

### 5. Inconsistent with Activities

Defendant argues that the ALJ discounted Plaintiff's reported symptoms because of Plaintiff's activities. ECF No. 15 at 9-10 (citing Tr. 19-20). An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.

ORDER - 28

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discount a claimant's symptom claims when the claimant

reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, in the context of the listings analysis, the ALJ observed that although

Plaintiff alleged difficulty handling stress and changes in his routine, in March

2016 he reported that he provided care for his children, including feeding them,

reading to them, changing diapers, playing with them, and putting them to bed.  Tr.

20 (citing Tr. 272, 277).  The ALJ also noted that Plaintiff could prepare simple

meals and perform household chores.  Tr. 20 (citing Tr. 273).  However, the ALJ

did not discuss or rely on Plaintiff's activities as a reason to discount Plaintiff's

symptom claims.  Instead, the ALJ limited her discussion of Plaintiff's activities to

the analysis of the specific functional area of adapting and managing himself under

the step three findings.  Tr. 20.  The Court is constrained to affirming the ALJ's

decision on a ground that the ALJ invoked in making her decision.  *See Orn*, 495

F.3d at 630; *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir.

2006).  As the ALJ did not rely on Plaintiff's activities to discredit his symptom

allegations, this was not a clear and convincing reason to discount his subjective claims.

Even if the ALJ erred by discounting Plaintiff's symptom claims because of his reported activities, this error is harmless because, as discussed *supra*, the ALJ provided other legally sufficient reasons to discount Plaintiff's reported symptoms. *See Carmickle*, 533 F.3d at 1163.

## C. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of R.A. Cline, Psy.D., Faulder Colby, Ph.D., and Ivonne Garcia, MHP, MS. ECF No. 14 at 13-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim*, 763 F.3d at 1161 (alteration in original);

*see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[3]  However, an ALJ is required to

consider evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812

F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

"Other sources" include nurse practitioners, physicians' assistants, therapists,

teachers, social workers, spouses, and other non-medical sources.  20 C.F.R. §§

404.1513(d), 416.913(d) (2013).  An ALJ may reject the opinion of a non-

acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763

F.3d at 1161.

   *1. Dr. Cline*

   On April 5, 2016, R.A. Cline, Psy.D., conducted a psychological evaluation

and diagnosed Plaintiff with borderline personality disorder, antisocial personality

disorder traits, unspecified bipolar disorder, and marijuana use disorder in early

reported remission.  Tr. 429-33.  Dr. Cline opined that Plaintiff had marked

limitations in the ability to communicate and perform effectively in a work setting,

maintain appropriate behavior in a work setting, and complete a normal workday

---

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical

source, as well as the requirement that an ALJ consider evidence from non-

acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d)

(2013).

and workweek without interruptions from psychologically based symptoms. Tr. 432. She found moderate limitations in Plaintiff's ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, ask simple questions or request assistance, and set realistic goals and plan independently. Tr. 431-32.

The ALJ gave Dr. Cline's opinion little weight. Tr. 25. Because Dr. Cline's opinion was contradicted by the nonexamining opinions of Drs. Rose and Kessler, Tr. 87-112, 115-40, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

a. Inconsistent with Longitudinal Treatment History

The ALJ discounted Dr. Cline's opinion because it was inconsistent with Plaintiff's longitudinal treatment history. Tr. 25. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ found Dr. Cline's opined marked and moderate limitations to be inconsistent with Plaintiff's longitudinal treatment history which showed repeated and consistent clinical findings and observations demonstrating less significant functional limitations. Tr. 22-26; *see, e.g.,* Tr. 364 (November 2015: a mental status examination showed Plaintiff had good eye contact, no psychomotor

movements, and normal speech with a rapid rate; his thought process was tangential; he was extremely talkative but easy to redirect; he had euthymic mood, congruent affect, and he denied any psychosis; he had moderate insight and judgment with somewhat impaired concentration and attention; he had intact memory and normal intellectual ability); Tr. 395, 402, 408 (December 2015 to February 2016: Plaintiff was alert and cooperative with an appropriate appearance); Tr. 402-03, 408-09 (December 2015 to January 2016: Plaintiff had normal mood and affect, intact memory and concentration, logical and linear thought, fair insight and judgment, and no ideations of self-harm or harming others; however, his thought content exhibited some paranoia about getting mugged and he carried pepper spray); Tr. 396-97 (February 2016: Plaintiff had neutral to sad mood, intact memory and concentration, logical and linear thought, fair insight and judgment, and no ideations of self-harm or harming others); Tr. 444 (April 2016: Plaintiff's speech was slightly pressured and rapid, his mood was slightly manic and positive, and he endorsed homicidal ideation); Tr. 461-62 (May 2016: Plaintiff's speech was not as pressured or rapid, his mood was positive, he was slightly manic but with no evidence of depression, he had no homicidal ideation); Tr. 455-56 (June 2016: Plaintiff had congruent affect, intact memory, attention, and concentration, and logical and linear thought form despite facing situational stressors due to legal issues); Tr. 633-34 (August 2016: Plaintiff had

normal findings upon mental status examination); Tr. 625 (August 2016: Plaintiff was imprisoned for about four months and returned to treatment in December 2016); Tr. 626 (December 2016: Plaintiff had a normal mental status examination with a pleasant and happy mood, full ranging affect, intact memory, attention, and concentration, logical and linear thought form, and normal cognitive function); Tr. 558, 564, 572, 577, 582, 590, 608-09, 615-16, 619-20 (January 2017 to November 2017: treatment records showed that Plaintiff continued to have generally normal mental status examination findings while he remained medication compliant, with only some reports of mild anxiety secondary to situational stressors); Tr. 590, 598-99 (April 2017: Plaintiff had a slight increase in his anxiety, but he attributed the majority of his symptoms to stress over a court hearing; he returned to having normal mental status examination findings at his next appointment). The ALJ also observed that upon examination, Dr. Cline found Plaintiff presented with an appropriate appearance, demonstrated normal speech, and was cooperative with fair eye contact, although his affect was "slightly flattened" and he was tired. Tr. 432-33. The ALJ cited Dr. Cline's report that when asked about auditory and visual hallucinations, Plaintiff responded "maybe a few times," and he endorsed ongoing paranoia. Tr. 433. Further, the ALJ noted that Dr. Cline's report showed Plaintiff endorsed fairly recent suicidal ideations, but he described his attempts at suicide as generally "things that endanger me" rather than overt plans to end his

ORDER - 35

life.  Tr. 433.  The ALJ noted that Dr. Cline found Plaintiff to be oriented with

mostly intact memory, an excellent fund of knowledge, intact insight and

judgment, and fair concentration across the mental status examination tasks.  Tr.

433.  Based on this record, the ALJ reasonably concluded that Plaintiff's

longitudinal treatment history did not support the marked and moderate limitations

assessed by Dr. Cline.  Tr. 25.  This was a specific and legitimate reason,

supported by substantial evidence, to discount Dr. Cline's opinion.

### b.  Familiarity with the Record

The ALJ also discounted Dr. Cline's opinion because she did not review

Plaintiff's longitudinal medical records before rendering her opinion.  Tr. 25.  The

extent to which a medical source is "familiar with the other information in [the

claimant's] case record" is relevant in assessing the weight of that source's medical

opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  Here, the ALJ observed

that Dr. Cline did not review any of Plaintiff's records prior to providing her

opinion.  Tr. 25; *see* Tr. 429 ("Records reviewed: N/A").  Instead, the ALJ found

that Drs. Rose and Kessler, who reviewed Plaintiff's medical records, Tr. 88-91,

116-119, rendered opinions that were consistent with Plaintiff's longitudinal

treatment history.  Tr. 26.  This was a specific and legitimate reason, supported by

substantial evidence, to discount Dr. Cline's opinion.

c.  Length of Treatment Relationship and Frequency of

Examination

The ALJ discounted Dr. Cline's opinion on the ground that it was based

solely on Dr. Cline's onetime evaluation of Plaintiff, as she did not review

Plaintiff's longitudinal medical records prior to providing her opinion.  Tr. 25.  The

number of visits a claimant had with a particular provider is a relevant factor in

assigning weight to an opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  However,

the fact that an evaluator examined Plaintiff one time is not a legally sufficient

basis for rejecting the opinion.  The regulations direct that all opinions, including

the opinions of examining providers, should be considered.  20 C.F.R. §

404.1527(b), (c), 416.927(b), (c).  The Court notes the ALJ's rationale is

inconsistent with the ALJ giving great weight to Drs. Rose and Kessler, who had

no treatment relationship with Plaintiff.  Tr. 26.  This was not a specific and

legitimate reason to discount Dr. Cline's opinion.  However, such error is harmless

because the ALJ provided specific and legitimate reasons, supported by substantial

evidence, discussed *supra*, to discount Dr. Cline's opinion.  *Molina,* 674 F.3d at

1115.

d.  Disability Duration Requirement

The ALJ discounted Dr. Cline's assessment because she opined that

Plaintiff's impairments would cause limitations for a nine to 12-month period.  Tr.

25, 432.  Temporary limitations are not enough to meet the duration requirement

for a finding of disability.  20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a

claimant's impairment to be expected to last for a continuous period of not less

than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at

1165 (affirming the ALJ's finding that treating physicians' short-term excuse from

work was not indicative of "claimant's long-term functioning").

The ALJ noted that Dr. Cline's opinion only assessed restrictions for a

period of nine to 12 months, which did "not necessarily meet the 12-month

duration for a severe impairment."  Tr. 25.  To be disabled, an impairment must be

expected to last for a continuous period of at least 12 months.  *See* 20 C.F.R. §§

404.1509, 416.909; *see also* 20 C.F.R. §§ 404.1505, 416.905.  Here, Dr. Cline

opined that Plaintiff would be impaired with available treatment for up to 12

months.  Tr. 432.  Therefore, Dr. Cline's opinion satisfied the disability duration

requirement and this was not a specific and legitimate reason to discredit her

opinion.  However, such error is harmless because the ALJ provided other specific

and legitimate reasons, supported by substantial evidence, discussed *supra*, to

discount Dr. Cline's opinion.  *Molina,* 674 F.3d at 1115.

*2. Dr. Colby*

On April 12, 2016, Faulder Colby, Ph.D., issued an opinion as to Plaintiff's

limitations.  Tr. 434-36, 653.  Dr. Colby indicated that Plaintiff's application

included Dr. Cline's evaluation and records from Central Washington Comprehensive Mental Health. Tr. 434. Dr. Colby listed diagnoses of bipolar I disorder, borderline personality disorder, and antisocial personality disorder. Tr. 436. Dr. Colby's opinion mirrored that of Dr. Cline, citing marked limitations in Plaintiff's ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 435. He noted moderate limitations in Plaintiff's ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, ask simple questions or request assistance, and set realistic goals and plan independently. Tr. 435.

The ALJ gave Dr. Colby's opinion little weight. Tr. 25. Because Dr. Colby's opinion was contradicted by the nonexamining opinions of Drs. Rose and Kessler, Tr. 87-112, 115-40, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Colby's opinion. *Bayliss*, 427 F.3d at 1216.

### a. Opinion Based on Discredited Medical Opinion

The ALJ discounted Dr. Colby's opinion for relying on Dr. Cline's discredited opinion. Tr. 25. An ALJ may reject an opinion that is based heavily on

ORDER - 39

another physician's properly discredited opinion. *Paulson v. Astrue*, 368 Fed. App'x 758, 760 (9th Cir. 2010) (unpublished). The ALJ observed that Dr. Colby based his opinion on Dr. Cline's evaluation, which the ALJ found to be inconsistent with Plaintiff's longitudinal treatment history, and Dr. Colby offered no independent objective findings for his affirmation of Dr. Cline's report. Tr. 25. Plaintiff argues that Dr. Colby's assessment was "not based solely on Dr. Cline's evaluation," as he also reviewed Plaintiff's mental health records. ECF No. 14 at 17 (citing Tr. 653). While Dr. Colby did also review Plaintiff's mental health records, his opined functional limitations mirrored those assessed by Dr. Cline, and Dr. Colby did not explain any of his opinions or set forth any independent objective findings for his affirmation of Dr. Cline's report, other than to state that Dr. Cline's "diagnoses were supported by her evaluation and report." Tr. 429-36, 653. Therefore, it was reasonable for the ALJ to find that Dr. Colby's opinion was based on Dr. Cline's discredited evaluation. Tr. 25. Because the Court found *supra* that the ALJ provided legally sufficient reasons to discredit Dr. Cline's opinion, this was a specific and legitimate reason to discredit Dr. Colby's opinion.

### b. Check Box Form

The ALJ also discounted Dr. Colby's opinion because it was only a check box form with no explanation for the assessed limitations. Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported.

ORDER - 40

*Bray*, 554 F.3d at 1228. For this reason, individual medical opinions are preferred over check box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, Dr. Colby's opinion consisted of a check box form, with no explanation as to the cause of Plaintiff's limitations, the extent of the limitations, or why the limitations would be expected to last for 12 months. Tr. 434-35. While Dr. Colby had access to Plaintiff's treatment records from Central Washington Comprehensive Mental Health, Tr. 434, as discussed throughout the ALJ's decision, Plaintiff's longitudinal treatment records did not support marked and moderate functional limitations. Given the lack of explanation, this was a specific and legitimate reason to reject Dr. Colby's opinion.[4]

_____

[4] Plaintiff also argues that the ALJ erred by failing to consider that Dr. Colby's opinion represented a governmental determination of disability. ECF No. 14 at 18 (citing Tr. 25). Plaintiff cites *Holbrook v. Berryhill*, 696 Fed. App'x 846 (9th Cir. 2017) (unpublished opinion), to suggest that the ALJ failed to adequately consider

*3. Ms. Garcia*

On March 17, 2017, Ivonne Garcia, MHP, MS, completed a medical source statement. Tr. 437-40. Ms. Garcia opined that Plaintiff was markedly limited in his ability to carry out detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from

---

Dr. Colby's opinion. ECF No. 14 at 18. In *Holbrook*, the ALJ failed to adequately consider a State disability determination in his decision. *Id.* Although §§ 404.1504 and 416.904 provide that a state disability decision is not binding on the ALJ, a blanket rejection of a Department of Social and Health Services (DSHS) opinion is contrary to the Social Security requirements to evaluate each medical source opinion and consider the supporting evidence underlying the State agency decision. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *see also* 404.1527(b), (c), 416.927(b), (c). Here, the ALJ noted that Dr. Colby assessed Plaintiff for DSHS, and as discussed *supra*, provided specific and legitimate reasons to discount his opinion. Tr. 25.

supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and maintain concentration, persistence, or pace. Tr. 437-39. She opined that Plaintiff was moderately limited in his ability to carry out very short, simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, be aware of normal hazards and take appropriate precautions, perform activities of daily living, and maintain social functioning. Tr. 437-39. Ms. Garcia opined that Plaintiff met the paragraph C criteria of the mental listings, she would likely be off-task 12 percent to 20 percent of the time during a 40-hour workweek, and she would likely miss three workdays per month. Tr. 439.

The ALJ gave little weight to Ms. Garcia's opinion. Tr. 25. Because Ms. Garcia is an "other source," the ALJ was required to provide germane reasons to discount her opinion. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

ORDER - 43

### a. Check Box Form

The ALJ discounted Ms. Garcia's opinion because it was a check box form with no explanation for the assessed limitations. Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. For this reason, individual medical opinions are preferred over check-box reports. *Crane*, 76 F.3d at 253; *Murray*, 722 F.2d at 501. However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo*, 871 F.3d at 677 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, the ALJ was correct that Ms. Garcia did not cite any medical evidence to support her opinion. Tr. 25. However, that Ms. Garcia's opinion was set forth in a checkbox form is not enough by itself to discount her treating-examiner opinion, if it was otherwise adequately supported by Ms. Garcia's medical notes. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo*, 871 F.3d at 667 n.4. Here, even if the ALJ erred by discounting Ms. Garcia's opinion because it was inadequately supported, this error is harmless because, as is discussed below, Ms. Garcia's opinion was inconsistent with Plaintiff's longitudinal treatment record. *See Molina,* 674 F.3d at 1115.

### b. Inconsistent with Longitudinal Treatment History

The ALJ also discounted Ms. Garcia's opinion because it was inconsistent with Plaintiff's longitudinal treatment history. Tr. 25. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ found Ms. Garcia's opinion to be inconsistent with clinical findings and professional observations throughout Plaintiff's longitudinal treatment history, which showed mostly normal mental status examinations on a monthly basis for the last three years. Tr. 22-26; *see, e.g.,* Tr. 364 (November 2015: a mental status examination showed Plaintiff had good eye contact, no psychomotor movements, and normal speech with a rapid rate; his thought process was tangential; he was extremely talkative but easy to redirect; he had euthymic mood, congruent affect, and he denied any psychosis; he had moderate insight and judgment with somewhat impaired concentration and attention; he had intact memory and normal intellectual ability); Tr. 395, 402, 408 (December 2015 to February 2016: Plaintiff was alert and cooperative with an appropriate appearance); Tr. 402-03, 408-09 (December 2015 to January 2016: Plaintiff had normal mood and affect, intact memory and concentration, logical and linear thought, fair insight and judgment, and no ideations of self-harm or harming others; however, his thought content exhibited some paranoia about getting mugged and he carried pepper spray); Tr. 396-97 (February 2016: Plaintiff had

ORDER - 45

neutral to sad mood, intact memory and concentration, logical and linear thought, fair insight and judgment, and no ideations of self-harm or harming others); Tr. 444 (April 2016: Plaintiff's speech was slightly pressured and rapid, his mood was slightly manic and positive, and he endorsed homicidal ideation); Tr. 461-62 (May 2016: Plaintiff's speech was not as pressured or rapid, his mood was positive, he was slightly manic but with no evidence of depression, he had no homicidal ideation); Tr. 455-56 (June 2016: Plaintiff had congruent affect; intact memory, attention, and concentration, and logical and linear thought form despite facing situational stressors due to legal issues); Tr. 633-34 (August 2016: Plaintiff had normal findings upon mental status examination); Tr. 625 (August 2016: Plaintiff was imprisoned for about four months and returned to treatment in December 2016); Tr. 626 (December 2016: Plaintiff had a normal mental status examination with a pleasant and happy mood, full ranging affect, intact memory, attention, and concentration, logical and linear thought form, and normal cognitive function); Tr. 558, 564, 572, 577, 582, 590, 608-09, 615-16, 619-20 (January 2017 to November 2017: treatment records showed that Plaintiff continued to have generally normal mental status examination findings while he remained medication compliant, with only some reports of mild anxiety secondary to situational stressors); Tr. 590, 598-99 (April 13, 2017: Plaintiff had a slight increase in his anxiety, but he attributed the majority of his symptoms to stress over a court hearing; he returned to having

ORDER - 46

normal mental status examination findings at his next appointment). The ALJ

reasonably concluded that Plaintiff's longitudinal treatment history did not support

the marked and moderate limitations assessed by Ms. Garcia. Tr. 25. This was a

germane reason to discount Ms. Garcia's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE.**

DATED March 5, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE